(No. 37012.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MYLES HARPER, Plaintiff in Error.

*Opinion filed Sept. 28, 1962.—Rehearing denied Nov. 29, 1962.*

HOWARD T. SAVAGE, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and RUDOLPH L. JANEGA, Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant Myles Harper was indicted for the unlawful possession of a narcotic drug, found guilty after a trial before the court, and sentenced to the penitentiary for a term of four to ten years. Defendant prosecutes this writ of error contending that the trial court erred in failing to suppress certain evidence, and that the record does not support his conviction.

It is undisputed that about 10:30 P.M. on October 11, 1960, the defendant was parked in a 1960 Cadillac convertible near 47th Street and South Park Avenue in Chicago. One Alean Walker first went to his car and was then taken into custody by the police when she crossed the street. She turned over to the police a small package containing white powder. Defendant then drove away and his car was found three or four minutes later about four blocks away in a parking lot with the motor running and lights on. Two packets of heroin were found in open view on the front floor of the automobile. Three days later the defendant

surrendered to the police, but denied any knowledge of the two packets of heroin.

Prior to his trial, defendant filed a verified motion to suppress evidence. In this motion defendant averred, *inter alia,* that on or about October 11, 1960, he was peacefully seated in his parked automobile at about 410 East 47th Street; that as he started his automobile and proceeded towards the intersection of 47th Street and South Parkway, an unknown man drew a revolver and shot at him, putting him in great fear; that an automobile pursued him and that he turned right on Prairie Avenue and into a parking lot and fled the scene on foot. He further averred that the men who followed him, and who later proved to be police officers, made a search of his automobile without a warrant and obtained, as a result of the search, a certain white powdered substance. Petitioner claimed that the white powdered substance was obtained as a result of an unlawful search and seizure and prayed that it be excluded as evidence and returned to him forthwith.

At the hearing on the motion to suppress evidence, police officer Emmons Russell testified that he arrested Alean Walker at 10:30 P.M. on October 11, 1960, in the vicinity of 47th Street and South Park in Chicago, immediately after he observed her talking with the defendant. He saw the defendant hand Walker a small package which she tucked in her waistband. After he took her into custody, he received the package from her and found it contained a white powder. He then signalled another police officer by hand and proceeded to attempt to apprehend the defendant. He testified that as he proceeded to cross the street, the defendant took off at high speed and ran a red light at South Park. He admitted that he drew his gun but did not shoot. Two squad cars were working in the area and the first car gave chase after the defendant. The second car first picked up officer Russell and Miss Walker and then gave chase. They found defendant's car abandoned

in a parking lot with the doors open and the ignition on, and also found two packages of white powder on the floor of the car.

William Massett, an inspector for the Division of Narcotic Control of the State of Illinois, and officer Clemie Paschal corroborated officer Russell's testimony substantially, although neither of them had seen the defendant hand the packet of white powder to Miss Walker.

The trial court denied the motion to suppress evidence and the cause was continued for trial. In the bench trial, the State again presented the testimony of officer Russell and narcotic inspector Massett regarding the transfer of the packet from defendant to Walker, the subsequent chase, and the discovery of the packets of white powder on the floor of the defendant's car. In addition Russell testified that he field-tested the packages found on the floor of defendant's car and obtained a positive reaction. He placed notations on them, inventoried them and took them to the police Crime Detection Laboratory for analysis. A qualified chemist at the laboratory, Andrew Principe, obtained the packets from the sealed envelope in the narcotics safe on October 12, 1960, analyzed them, and was of the opinion that the packets contained heroin.

Defendant presented his wife as a witness and she testified that she left home with defendant between 9 and 9:30 P.M. on October 11 and they stopped for a drink on 47th Street just off South Park. They then went into Walgreen's on the corner of 47th and South Park and bought cigarettes and thereafter got into their parked car. She testified that she saw Miss Walker come from a store and called to her. Whereupon Walker leaned on the door and talked awhile. This was about 10:30 P.M. She testified that her husband did not hand Walker a package. After Miss Walker went back across the street, she and her husband drove to 47th and Prairie and parked in the parking lot. Her husband got out to purchase some liquor and she went to purchase

barbecue. After she got the barbecue, she went to the liquor store to get her husband, but he continued to drink and she became angry and left about 12 or 12:30 A.M.

Defendant, testifying in his own behalf, repeated the same story and further testified that, after his wife left the liquor store, he looked for his car but it was not there and he then went to the Picadilly Lounge where he had more drinks. He stayed there, slept until 7:00 A.M., had a few more beers, and went home. He asked his wife what happened to the car and she said that she did not get it. Rather than calling the police, he called his attorney, who said that he would check the place where the stolen cars were. His attorney called him that evening and asked him to surrender to the police.

One Earl Shelby, a professional informer, was called to testify on defendant's behalf and stated that he had seen Alean Walker by appointment at 47th Street and South Park on October 11, 1960, and he gave her $160 and she gave him two "26's" of narcotics. He then saw her talking to officer Russell but did not see her talk to anybody in a car.

We first consider defendant's claim that the trial court erred in denying his motion to suppress and allowing the packets of white powder found in his car to be admitted into evidence. He contends that the search revealing the white powder was illegal in that defendant was not arrested at the time of the search; that there was no probable cause for his arrest; and that the attempt to apprehend defendant was the result of an illegal search of Alean Walker.

The broad prohibitions of the State and Federal constitutions against unreasonable searches permit by implication all reasonable searches. However, neither the constitutions nor our decisions nor the decisions of the United States Supreme Court afford a fixed formula by which we may resolve every question of the reasonableness of a search. (*Go-Bart Importing Co.* v. *United States,* 282 U.S.

344, 75 L. ed. 374; *People* v. *Watkins,* 19 Ill.2d 11.) Our resolution of the question in the case at bar must depend upon the particular facts presented.

It appears that the heroin was found by the police in full view in an open abandoned car used by defendant in fleeing from the police. The police had previously observed the defendant hand a similar packet of white powder to Walker, a person the same police had previously arrested on a narcotic charge. We think it clear that the police had reasonable cause to pursue the defendant, and if possible, to arrest him. Nor do we believe it questionable, but that upon an arrest of the defendant under these circumstances the police could have searched him and the items in his immediate control. *People* v. *Watkins,* 19 Ill.2d 11.

We do not think that the reasonableness of this search is changed by defendant's success in eluding the police. Upon finding the open car abandoned by the fleeing defendant, we think it reasonable that the police in the performance of their duties would look into the car to determine if there were anything there to identify the defendant, or any paraphenalia of the suspected narcotic traffic.

It is clear that an abandoned motor vehicle does not have the same sanctity as a defendant's dwelling house in the constitutional field of search and seizure. (*People* v. *Tabet,* 402 Ill. 93, 100; cf. *People* v. *Grod,* 385 Ill. 584, 586.) In *People* v. *Exum,* 382 Ill. 204, we upheld the denial of a motion to suppress evidence of a key cutting machine and a camera observed by police on the front and rear seats of a defendant's car, stating, "it is not a search to observe that which is open and patent."

We do not think that defendant's motive in fleeing the police, nor the legality of Miss Walker's arrest and search have any bearing on the reasonableness of the conduct of the police in this case. From all the facts and circumstances we do not believe that the packets of heroin were obtained

by an illegal search, and hold that the motion to suppress was properly denied.

We next turn to defendant's contention that he was not proved guilty beyond a reasonable doubt. From the entire record we believe it clear that there was ample evidence of proper protective techniques in the analysis of the white powder found in defendant's car. The evidence clearly shows that officer Russell field tested the powder, found it positive, inventoried the two packets and took them in a sealed brown envelope to the crime laboratory the same night. The following morning the chemist stated that he opened the sealed envelope, which he removed from the safe, and made a determination that the white powder was heroin. While it is true that six other people had access to the police safe, there is no indication or suggestion of any substitution, alteration or other tampering with the contents of the exhibit. We feel that a proper foundation was established to permit the introduction into evidence of the packets of white powder and their analysis. *People* v. *Norman,* 24 Ill.2d 403; *People* v. *Polk,* 19 Ill.2d 310; *People* v. *Harris,* 17 Ill.2d 446.

We have also examined the record to determine if the evidence adduced proved that defendant had possession of the heroin found in his car. Contrary to the assertions of defendant we find the testimony of the police officers to be clear and unequivocal and the testimony of the defendant and his wife to be of doubtful credibility. We believe that the trial court could properly find from the evidence that defendant handed a packet of white powder to Miss Walker, that he thereafter fled alone in his car from the police, and left two packets of heroin in the car in the course of his flight. The heroin found in open view in his car three to four minutes after he fled to evade apprehension had been in the exclusive and immediate control of the defendant. The inference of guilty knowledge necessary to constitute possession is clear. *People* v. *Matthews,* 18 Ill.2d 164.

From a review of the entire record we find that defendant was properly found guilty beyond a reasonable doubt and that the evidence used against him was not obtained by an unlawful search. The judgment of the criminal court of Cook County is therefore affirmed.

*Judgment affirmed.*