THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD RENO, Defendant-Appellant.

(No. 60564;

First District (5th Division)—September 26, 1975.

James J. Doherty, Public Defender, of Chicago (David W. Hirschboeck, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Donald M. Devlin, and Linda Ann Miller, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE BARRETT delivered the opinion of the court:

The defendant, Ronald Reno, was convicted by a jury for committing the crime of murder in the stabbing of Mrs. Marcia Vespa and sentenced to 100 to 300 years in the Illinois State Penitentiary. Defendant raises three issues on appeal: whether defendant was proven guilty beyond a reasonable doubt where the only evidence connecting him to the crime was a thumbprint found three houses away from the scene of the crime; whether the prosecutor's closing argument, which referred to the fact that the State's evidence had not been contradicted by the defense, violated the defendant's fifth amendment privilege or shifted the burden of proof and whether the sentence imposed was excessive.

The evidence established that on the night of October 6, 1970, the house of Marcia Vespa was broken into and that she was stabbed to death. The victim had spent the evening at home with her daughter, Mrs. Bernicky, the latter retiring for the evening at about 10 p.m. Mrs. Bernicky testified that later that night her mother awakened her saying that she was hurt and the hospital should be called. Prior to the arrival of the police and fire department called by her she found a knife on the floor of her mother's bedroom, and placed it on the radiator. The fire department was unable to revive the victim.

The police began an investigation upon their arrival at the scene at about 12:30 a.m. The investigation showed that the house had most

likely been entered through a window above a stereo cabinet in the living room. Upon this cabinet was found a tennis shoe print with a ball and diamond pattern. During the examination of the house, another knife was recovered in the bedroom.

Later that morning the police were notified by a neighbor, Virginia Barry, that she had found three purses in the garage of her home, three houses down the street from the Vespa residence. The purses were identified by the victim's daughter as belonging to her and her mother. Crime lab technicians dusted the purses for fingerprints, and also dusted various other items found with the purses, including an unopened package of Marlboro cigarettes. Several tennis shoe prints similar to the print on the stereo were observed in the area where the purses were found.

On May 8, 1971, Police Investigator Hugh O'Hagen spoke to defendant at the 3rd District Police Station. He observed defendant wearing tennis shoes and called for a fingerprint comparison of the Vespa homicide. Based on such comparison defendant was subsequently charged and indicted for the murder of Marcia Vespa.

Mrs. Bernicky testified that on the morning of October 6, 1970, she purchased two packages of Marlboro cigarettes, with cellophane around the outside, from the proprietor of the cigar stand in the building in which she worked. The purse within which the cigarettes were kept was locked in her desk during the day while she was at work. She did not allow anyone during the course of the day to touch her cigarettes. After work Mrs. Bernicky went directly home, with one unopened package of Marlboros still in her purse. When she arrived at home she placed her purse on the desk in the study on the first floor. She testified that she did not allow anyone to touch her cigarettes while she was at home that evening and that no one had visited her family. She stated that she did not know defendant.

Stanley Panczykowski testified that he is the proprietor of the cigar stand in the building in which Mrs. Bernicky works. He stated that he receives the cigarettes that he sells from the manufacturer in cartons and that he opens the cartons and puts the packages of cigarettes on the shelves behind the counter, out of the reach of customers; that he never had the defendant help him in the store; that he specifically never had the defendant help him unpack any Marlboro cigarettes and that he has never seen defendant. He testified that he knew Mrs. Bernicky and that she worked in the same building where his cigar stand was located and stated that she bought cigarettes from him in the morning practically every day and that she always bought Marlboro soft packs.

Virginia Barry testified that on the morning of the crime at about 8:45 a.m. she contacted the police, informing them of three purses she

had found in her garage and also of a patterned tennis shoe footprint on the floor of the garage. Mrs. Barry had opened a brown purse, and while looking for some identification, came across a package of Marlboro cigarettes, which at that time did not appear at all significant to her. She testified that she had found something with the name of Vespa on it, and at that point realized that the items she found belonged to her neighbors. The three purses, she stated, had not been in her garage the night before. She did not know defendant, nor has defendant ever been a guest in her home.

Mobile unit technicians were called to inspect Mrs. Barry's garage. Photographs of the items were taken, and the purses and cigarette package were dusted for fingerprints. Ridged friction impressions were found on the cellophane surrounding the cigarette package. The purses, cigarettes and paper documents were placed in a large plastic bag and taken to the Crime Lab photo section where the items were processed and placed in a box which was then sealed.

Frank Nicholson testified that he has been a Chicago Police Department fingerprint technician for 13 years and has made more than 100,000 comparisons of fingerprints. He stated that by comparing fingerprints he was able to eliminate all the fingerprints that were left on the items submitted to him for comparison as fingerprints belonging to people who were known to the victim, or lived in the Vespa home, except for the ridged impressions that were left on the cellophane of the package of Marlboro cigarettes.

He thereupon compared the negative of the latent ridged impressions that were left on the Marlboro cigarette package cellophane to the negative of the right number one inked thumbprint of the defendant. He then enlarged the negative of the latent ridged impressions found on the cellophane, as well as the negative of the number one right thumbprint of defendant, to 100 times their original size. He then made a comparison of the characteristics that were visible to him in the latent impression found on the cellophane against the characteristics found on the right thumb inked impression of the defendant. He found 20 different points of identical comparison between the two negatives. He testified at trial that in no case were more than 12 points of identical comparison necessary for positive identification of fingerprints, and that in his professional opinion the two impressions were definitely made by the same individual and could not possibly have been made by two different people. The People acknowledged that no evidence of any kind was produced at trial to establish a positive connection between footprints found at or near the scene of the crime and the footprints of the defendant.

OPINION

■■ The first issue defendant raises on appeal is that where, as in the instant case, fingerprints form a basis of the conviction, the fingerprints corresponding to those of the accused must have been found at the place where the crime was committed, under such circumstances that they could have only been impressed at the time the crime was committed. We disagree. The place where the fingerprints of the accused must be found, so as to connect him to the crime, has been interpreted to include that area in the immediate vicinity of the crime. (*People v. Malmenato*, 14 Ill.2d 52, 150 N.E.2d 806.) In that case a flashlight bearing defendant's fingerprint was found approximately 150 feet from the scene of the crime, in the front yard of the next residence about 8 hours after the offense occurred. The court held that the flashlight having been found in the immediate vicinity of the crime sufficiently established the connection between the accused and the attempted burglary. Since the term "immediate vicinity" does not lend itself easily to definition, we are constrained to look at the facts of each case individually. In so doing, we find the Barry garage to be in the immediate vicinity of the crime, and the purse with the package of cigarettes bearing defendant's thumbprint sufficient to establish defendant's intrusion into the Vespa home on the night in question.

■■ The chain of contact established by the State permitted the triers of fact to find beyond a reasonable doubt that defendant's thumbprint could have been impressed only at the time the murder of Mrs. Vespa was committed. The evidence at trial revealed that defendant's thumbprint could not have been placed upon the cigarette package prior to 10 p.m. on the day in question. Likewise, defendant's thumbprint could not conceivably have been placed upon the package of cigarettes after 12:30 a.m. because of the strong police activity and surveillance of the area around the Vespa home. Thus we find that the unexplained presence of defendant's thumbprint on a package of cigarettes found in a purse which had been stolen from the Vespa home during the same 2½-hour period of time in which a murder was committed in that residence is not consistent with any reasonable hypothesis of innocence. (*People v. Taylor*, 32 Ill.2d 165, 204 N.E.2d 734.) We therefore hold that evidence establishes defendant's guilt beyond a reasonable doubt.

■■ The next issue raised by defendant is that the State violated defendant's fifth amendment rights against self-incrimination and shifted the burden of proof by drawing attention to defendant's failure to take the witness stand as well as his failure to offer witnesses to dispute the testimony of the State's fingerprint expert. In support of his contention, defendant cites the prosecutor's closing argument that defendant "had

every right to call any and every expert in the United States" and later again that "I never did hear whether or not the defendant smokes." It is permissible for a prosecutor to comment on the uncontradicted nature of the State's case even where the only person who could have contradicted the State's evidence was the defendant himself. (*People v. Skorusa*, 55 Ill.2d 577, 304 N.E.2d 630; *People v. Mills*, 40 Ill.2d 4, 237 N.E.2d 697.) In *People v. Peter*, 55 Ill.2d 443, 303 N.E.2d 398, the Illinois Supreme Court held that a prosecutor's comments during final argument concerning the lack of evidence contradicting the evidence the State had offered on the subject of fingerprints did not operate to shift the burden of proof to the defendant, that the absence of such evidence is a proper area of prosecutorial comment, and counsel may properly emphasize uncontradicted expert testimony. Based upon these cases, we find that defendant's rights were not violated.

■■ The next issue defendant raises on appeal is that the sentence of 100 to 300 years is excessive and should be reduced. A sentence which is within the maximum term set by the legislature for the crime involved will not be considered constitutionally excessive and will not be disturbed on review. (*People v. Dudley*, 46 Ill.2d 305, 263 N.E.2d 1; *People v. Calcaterra*, 33 Ill.2d 541, 213 N.E.2d 270.) The authority of reviewing courts to reduce sentences imposed by trial courts should be applied with considerable caution, since the trial court judge ordinarily has a superior opportunity in the course of the trial and the hearing in aggravation and mitigation to make a sound determination concerning the punishment to be imposed than do appellate tribunals. (*People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673.) In the instant case the trial judge properly considered the seriousness of the stabbing murder committed by defendant, referring to it as "one of the most vicious types of crime that we have in our society." Furthermore, the trial judge not only properly took into consideration the defendant's prior history of criminal violence produced in the hearing in aggravation, but also considered the constitutional objective of restoring the defendant to useful citizenship in speaking of his future appearances before the parole board.

Accordingly, defendant's sentence will not be reduced.

In view of the foregoing, the judgment of the circuit court is affirmed.

Affirmed.

DRUCKER and LORENZ, JJ., concur.