THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GREGORY SANSONE, Defendant-Appellant.

Second District (2nd Division)    No. 75-104

Opinion filed October 7, 1976.

J. Michael Fitzsimmons, of Fitzsimmons & Rocco, of Chicago, and Robert H. Heise, Patrick M. Coolahan, and Thomas J. Laz, all of Wheaton, for appellant.

John J. Bowman, State's Attorney, of Wheaton (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

After a jury trial in the circuit court of Du Page County the defendant, Gregory Sansone, was found guilty of theft of property valued in excess of $150, in violation of section 16—1(a)(1) of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)). He was sentenced to a term of 1 to 3 years and fined $250.

Defendant appeals contending that (1) the trial court erred in admitting into evidence 26 record albums, (2) the value of the albums was not proved beyond a reasonable doubt and (3) certain statements in the prosecutor's closing argument violated the defendant's statutory and constitutional right not to testify because they called attention to defendant's failure to do so.

The testimony reveals that defendant was arrested on January 10, 1974, after having been observed by James Baier (security manager at the Yorktown Shopping Center store of Montgomery Ward & Co. (Ward)) stuffing 26 record albums in his over-sized pants (supported by heavy suspenders), and leaving the store without paying for the albums. Relevant to the admissibility of the albums Baier, who was no longer in Ward's employ at the time of trial, testified that when defendant was led back to Ward's security office he removed the albums from his pants and placed them on the desk. Baier then counted the records, placed the date, his initials and Sansone's name on the label of each record, made a list of them (and their value, aggregating $171.62) and bound them with twine. After the police came and arrested defendant, Baier put the bundle of albums in Ward's "evidence room and locked them up." At trial Baier identified the bundle and the 26 albums from his identifying marks on the records, and the twine he used (including the "tying" and "the knot" around the bundle). The trial court admitted the albums in evidence (and the list Baier made of them).

Defendant contends that the admission of the albums and the list was error because the State failed to show a chain of custody and possession.

He argues that the possibility exists that the albums may have been tampered with or substituted between the date of his arrest and the date of trial, because Baier left Ward's employ a few months after the arrest, and others may have had access to them.

■■ The rule is well established that a foundation for the admission in evidence of an object may be laid either through its identification by a witness or through establishment of a chain of possession. (*People v. Greer* (1963), 28 Ill. 2d 107.) To require both identification of the object by a witness and establishment of a chain of possession would impose an unnecessary burden and would not assure a fairer trial to the accused. *People v. Kristovich* (1975), 32 Ill. App. 3d 979, 985; see also *People v. Cain* (1966), 35 Ill. 2d 184, 188.

■■■ Baier identified the bundle of albums in question, including the manner in which it was tied and knotted, and each of the records bore Baier's initials, the date and the defendant's name. Baier's identifying marks enabled him to make a positive identification of the record albums as the ones which were taken by the defendant. There is not the slightest proof in the record of any substitution or any form of tampering with them. The prosecution was not required under the circumstances to exclude all possibility of tampering. All that is required is that there be only the reasonable probability that the article has not been changed in any important respect. (*People v. Marquis* (1974), 24 Ill. App. 3d 653, 661.) It is clear, therefore, that the State laid a proper foundation for the introduction into evidence of the albums.

■■ We will consider the issue of the admissibility of State's exhibit 27, which was Baier's memorandum containing a list of the albums with the value he placed on each of them, in conjunction with defendant's contention that the State did not prove the value of the albums beyond a reasonable doubt. First of all, defendant argues that because Baier determined the value to be $171.62 from a coding chart on the wall of his office and from a telephone call (or calls) to a salesgirl in the record department, Baier's memorandum (exhibit 27) was inadmissible as proof of the value of the albums because the values were based on hearsay. That exhibit was the list Baier made of all the record albums taken by the defendant and which Baier taped to the first record album in the bundle of 26 record albums taken by the defendant (exhibits 1 through 26). It was a list of all the record albums involved and showed 13 "E" coded records stated to be valued at $4.77 each; 5 "F" code records valued at $5.77 each; 1 "J" code record at $11.97; 4 "I" code records valued at $10.97 each; 1 "FA" code record valued at $6.97; and 2 "H" code records at $8.97 each. Clearly the values stated thereon were based on hearsay and exhibit 27 was therefore not admissible as proof of the values of the 26 record

albums. However, it was admissible to the extent that it constituted an itemization of the record albums taken by the defendant.

■■ Proof of their value (and that it was in excess of $150) was also presented by the State in the testimony of Albert Geigle, Ward's national record buyer for 14 years. Geigle testified that he had been a merchandiser for Sears Roebuck for 22 years prior thereto in its record and music department; that he was thoroughly familiar with Ward's price coding system (used in Yorktown and nationally) because he was the one who established the code; that he checks record pricing in all stores throughout the United States and sets recommended prices for their sales; that the particular merchandiser would either follow that recommendation or "shop competition" and price accordingly; that Geigle examined the record albums, noticed on each of them Baier's name "on the bottom of the coding." Over objection Geigle testified that in his opinion the value of the records on January 10, 1974, was $171. On cross-examination Geigle testified that one of the albums, exhibit 16, was an "I" coded album, actually valued at $10.97 which had been changed to a "J" album valued at $11.97 (or a difference of one dollar). Mr. Geigle's testimony as to value was not based on hearsay. Neither was it contradicted by defendant's witness as to value. In the absence of contrary evidence Mr. Geigle's testimony established beyond a reasonable doubt that the value of the property taken by the defendant was in excess of $150.

Finally, we consider the defendant's contention that certain statements by the prosecutor in closing argument violated the defendant's statutory and constitutional right not to testify. After summarizing certain of the testimony presented by the State the prosecutor made these two statements:

"That is the only evidence we have pertaining to whether or not he had authorized control over the property.

❋ ❋ ❋

There has been no other evidence submitted in regard to that issue."

Defendant argues that these statements called attention to the defendant's failure to testify in violation of an Illinois statute (Ill. Rev. Stat. 1973, ch. 38, par. 155—1) and the fifth and fourteenth amendments of the Constitution of the United States. Section 155—1 states in part that the court shall not "permit any reference or comment to be made to or upon [the] neglect" of a defendant in any criminal case to testify.

■■ A similar argument was made and rejected in *People v. Hopkins* (1972), 52 Ill. 2d 1, 6. There the prosecutor stated several times in closing argument that the testimony of the prosecution witnesses was

516

"uncontradicted." The Supreme Court, in holding that the defendant's statutory and constitutional rights were not violated, said:

> "The prosecution may, * * *, refer to the fact that the testimony of the State's witnesses is uncontradicted even though the defendant would be the only person who could have contradicted it [citations], for this involves no more than an accurate summary of the evidence."

See also *People v. Norman* (1963), 28 Ill. 2d 77, 81; *People v. Cruz* (1976), 38 Ill. App. 3d 21, 29.

In the case at bar the prosecutor's statement was no more than an accurate summary of the uncontradicted evidence against the defendant.

For the foregoing reasons the judgment of the circuit court of Du Page County is affirmed.

Judgment affirmed.

T. J. MORAN, P. J., and DIXON, J., concur.