THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WALTER JAROSIEWICZ, Defendant-Appellant.

First District (4th Division)    No. 59843

Opinion filed December 22, 1977.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Ira Churgin, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Iris E. Sholder, and Mary C. Shropshire, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the circuit court of Cook County, Criminal Division. Walter Jarosiewicz (hereinafter called "the defendant") was indicted for four counts of aggravated battery. After a jury trial, he was convicted of two counts of aggravated battery and sentenced to three years' probation, with the first six months to be served in the county jail. This sentence was later modified to three years' probation.

The issues presented for review are (1) whether it was error to deny the defendant's challenge for cause of a juror who said he did not believe a police officer would commit an unprovoked act of violence on a citizen; (2) whether the defendant was proven guilty beyond a reasonable doubt; (3) whether it was error to prohibit the defendant from cross-examining a police officer regarding a pending civil rights suit against the officer; (4) whether it was error to deny the defendant's motion to have the jury view the scene in question; (5) whether it was error to deny the defendant's motion for a mistrial when the prosecutor stated he would not object to the jury seeing the police report in question; (6) whether it was error to deny the defendant's motion for a mistrial when the prosecutor commented on the defendant's inconsistent defense filed in his answer to discovery; and (7) whether the chain of possession must have been shown in order to introduce a piece of sheet metal into evidence.

The incident at issue began when the defendant became engaged in an argument with his brother. Damage was done to the inside of their home as a result of this argument and their mother called the police in an effort to restrain the defendant's behavior. The defendant left before the police arrived and returned immediately after the police left. His continued misbehavior caused his mother to again call the police. Again, he left before they arrived.

Upon the mother's request that they stay, the responding officers waited for a supervisor and searched near and around the house for the defendant. The officers responding to each of the mother's calls for police assistance were Officers Grasz and Peebles. The responding supervisor was Sergeant Stanley.

After conducting a brief search of the house, Officers Peebles and Stanley went out to search the area outside, while Officer Grasz remained inside the house. After Peebles and Stanley walked down the gangway towards the back of the house, they searched the basement area in back of the house. They then saw the defendant in a cubbyhole in the basement.

Mr. Bolanos, an architect, and Mr. Nichol, a ballistics expert, testified the cubbyhole was 4'3" wide, 4'3" high, with joists that made it actually 3'7" high inside, and 5'5" deep. It was three feet off the ground. Mr. Bolanos presented and testified from several drawings he made of the cubbyhole and basement. One drawing of the cubbyhole was a perspective view. Bolanos testified minor distortion was present in all perspective drawings, and the defendant had not specifically asked him to make a perspective.

Officer Stanley testified when he first noticed the defendant he was crouched behind some wood and metal debris at the front of the cubbyhole. The defendant testified his legs were resting on the debris and when the officers grabbed for his legs the debris fell to the floor of the basement. The defendant then moved toward the back of the cubbyhole and sat on a stoop at the rear of it.

Grasz testified while sitting at the kitchen table filling out the report, he received a radio call from Peebles asking him to come down to the basement. When Grasz arrived in the basement Stanley told him to call for a police wagon. After Grasz went up the basement stairs to call for the wagon he saw a skid go flying out into the basement from the cubbyhole. While Peebles and Stanley stood at the front of the ledge, Grasz put in a distress call. As Peebles and Stanley attempted to get on the ledge a second skid was thrown. The defendant then swung a piece of metal at Stanley but missed and hit Peebles on the forehead. Peebles fell back, whereupon Grasz lifted him up and stood him between Grasz and Stanley, who all now stood at the ledge of the cubbyhole. Then, as the defendant was swinging a two-by-four at Stanley, a shot rang out. The defendant, however, continued to swing the two-by-four. A second shot was fired and the defendant fell back.

Stanley and Peebles testified when they first saw the defendant Stanley told him to come on out and not to cause any trouble. The defendant did not answer. Then one of the two officers called Grasz. The defendant jumped up and crouched behind the debris prior to Grasz's arrival. After Grasz had come and gone to make the call for the wagon, the defendant

stood up and yelled, "I'm going to kill you coppers." The defendant threw one skid and then another which went over the heads of Peebles and Stanley. The defendant then threw a piece of sheet metal which hit Peebles.

The defendant testified as he sat at the rear of the cubbyhole the officers moved away from the opening of the cubbyhole to a point where he could not see them. A couple of minutes later Peebles reappeared at the opening of the cubbyhole and fired two shots at the defendant. The defendant was then handcuffed and pulled from the cubbyhole. He was then taken up to the sidewalk in front of the house and put in a police wagon.

Stanley's testimony that the defendant continued to swing a two-by-four after the first shot coincides with Grasz's testimony. Peebles testified after the first shot the defendant dropped the two-by-four, moved backwards and picked up a second two-by-four. At this time Peebles fired the second shot.

Officer Belles testified he found a bullet in the basement area outside the cubbyhole. Professor Nichol, the defense ballistics expert, found a bullet hole in the back of the cubbyhole. One of the two shots fired by Peebles went through the defendant and the other was removed by surgery.

Regarding voir dire, the defendant exhausted his peremptory challenges prior to completion of jury selection. One of the peremptory challenges was used to exclude Samuel Richmond from the jury. Mr. Richmond stated he did not believe it possible that a police officer would commit an unprovoked act of violence on a citizen. Defendant's request that Richmond be excluded for cause was denied.

During the trial the prosecutor interrupted the defendant's attorney by stating that the prosecution had no objection to the jury seeing a police report the defendant was using during cross-examination of Officer Grasz. The police report had not been admitted into evidence and was not subsequently admitted.

While cross-examining the defendant, the prosecutor asked whether the defendant had stated in his answer to discovery that someone else had committed the acts alleged. No answer was given to this question.

After jury deliberations the defendant was found guilty of two counts of aggravated battery and sentenced to three years' probation, with the first six months to be served in the county jail. This sentence was later modified to three years' probation. From the verdict of guilty the defendant has filed this appeal.

The defendant claims his challenge to a potential juror, Samuel Richmond, for cause was improperly denied.

During voir dire, Richmond stated he did not believe a police officer

would commit an unprovoked act of violence on a citizen. For this reason the defendant claims Richmond was not impartial and should have been dismissed for cause. However, subsequent to the above statement Richmond reaffirmed he would be fair and impartial. He also stated there was no doubt in his mind he could place the testimony of the officers and the defendant on a parity.

■■ Our supreme court had occasion to discuss the standard as to when a juror is challenged for cause. In *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705, the court stated:

> "* * * [A] person is not competent to sit as a juror if his state of mind is such that with him as a member of the jury a party will not receive a fair and impartial trial." *Cole*, 54 Ill. 2d 401, 413.

The court in *Cole* recognized the determination of impartiality is left to the sound discretion of the trial judge, and stated:

> "His determination should not be set aside unless it is against the manifest weight of the evidence." *Cole*, 54 Ill. 2d 401, 414.

■■ Implicit in the court's denial of the challenge for cause in the instant case was the finding that Mr. Richmond, in light of all the questioning, had the requisite impartial state of mind. This finding is supported by the record. The trial judge properly exercised his discretion.

The defendant also claims he was not proven guilty beyond a reasonable doubt. He argues the testimony of the complaining witnesses was so improbable and unbelievable as to leave an overwhelming doubt of the defendant's guilt.

The identity of the defendant is not in dispute. He acknowledged he was in the cubbyhole when the police searched it. Medical testimony, as well as eyewitness testimony from three witnesses, including the victim, established the defendant struck Officer Peebles, causing him great bodily harm. Such eyewitness testimony also showed the defendant battered Peebles, knowing him to be a peace officer engaged in the execution of his official duties.

Officer Peebles stated he had received some 24 stitches at St. Elizabeth's Hospital, subsequent to the injury. The wound left a three-inch scar on his forehead. The treating physician, Dr. Constanzo, described the wound stating the gash was deep, right down to the bone. It is long accepted in Illinois, the testimony of even one person, if positive and credible, is sufficient to convict, even though such testimony is contradicted by the defendant (*People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182). In the case at bar the testimony of the victim and two eyewitnesses established the defendant, knowing Peebles to be a peace officer, battered Peebles with a piece of sheet metal, causing him great bodily harm.

■■ After a review of the entire record this court is convinced the

evidence was not so improbable as to raise a reasonable doubt of guilt.

The defendant additionally claims it was error for the trial court to prohibit the defendant from cross-examining an officer with regard to a pending civil rights suit against the officer.

In *People v. Marichec* (1976), 41 Ill. App. 3d 604, 353 N.E.2d 692, the defendant was charged with aggravated battery. He was not allowed to ask the complainant on cross-examination, in order to establish bias, whether there was a battery charge pending against him filed by the defendant. The charges arose from the same incident. The appellate court upheld the court's decision as a proper exercise of discretion, noting this type of examination is proper only where the defendant's complaint is first in time, "* * * as otherwise a defendant could file a subsequent complaint which would be purely self-serving and, as such, would be improperly admitted." *Marichec*, 41 Ill. App. 3d 604, 608.

In the instant case the charges clearly arose out of the same incident. The criminal complaints against the defendant were signed eight days after the incident. Notice of intention to sue civilly was not filed until some months later.

■■ Taking all things into consideration, the trial court properly exercised its discretion in prohibiting the line of cross-examination in question.

The defendant further contends it was error for the trial court to deny the defendant's motion to have the jury view the scene.

The granting or denying of a motion to have the jury view a scene rests within the trial judge's sound discretion. *People v. Durso* (1968), 40 Ill. 2d 242, 23 N.E.2d 842.

In the instant case the defense was allowed to use four large drawings to demonstrate the physical description of the cubbyhole. Their expert architect, David Bolanos, gave substantial and detailed testimony as to the actual dimensions of both the cubbyhole and the surrounding area. A plastic overlay, marked to indicate certain dimensions, hypothetical bullet trajectories, and the defendant's position, were also used as demonstrative evidence during trial, and admitted at the end of the defendant's case. In addition, Professor Nichol testified as to the physical dimensions of the cubbyhole. The People introduced verbal descriptions of the cubbyhole's dimensions, as well as pictures of the cubbyhole and the surrounding area. Pictures were also used and introduced into evidence by the defendant.

■■ We find the jury had ample demonstrative and testimonial evidence which sufficiently described the scene and, under such circumstances, the trial court's ruling was a proper exercise of discretion.

The defendant also maintains it was error for the trial court to deny the defendant's motion for a mistrial where the prosecutor, in the presence of

the jury, stated he would not object to the jury seeing a police report which was in the hands of the defendant's attorney.

The "to and from" report used to impeach the People's witness was not submitted as an exhibit and was not viewed by the jury. Knowing the report had not been admitted as evidence the prosecutor made the following comments during the cross-examination of Officer Grasz:

"Mr. Karavidas: Judge, we will ask that that has been introduced into evidence. We have no objection if the jury sees that.

The Court: Let's not characterize in front of the jury.

Mr. Karavidas: Judge, we have no objection to the jury seeing it.

The Court: At the proper time."

The witness was then excused and a side bar was requested, during which counsel argued such conduct was improper. No motion to strike was made. When court reconvened a new witness was called.

A fair and impartial trial is guaranteed to all persons, whether innocent or guilty, and it is the duty of the courts to uphold this guarantee. An accused person has a right to a trial by jury and the question is not whether a reviewing court may believe him innocent or guilty but what the jury's verdict would have been had the inflammatory remarks not been made. Reversible error occurs where remarks by the prosecutor are likely to prejudice the jury, unless the court's action is sufficient to overcome the prejudicial effect resulting from the particular remark. See *People v. McLaughlin* (1929), 337 Ill. 259, 169 N.E. 206.

In the case at bar the trial judge instructed the jurors they were to determine the facts of the case based only on the evidence, and the statements made by attorneys not based on evidence were to be disregarded.

■■ An examination of the complete record reveals the court's action was sufficient to overcome any prejudicial effect resulting from the remark, and the jury's verdict was not affected. The trial court properly denied the defendant's motion for a mistrial with regard to this issue.

In a separate motion for a mistrial the defendant claimed he was prejudiced when the prosecutor commented on the defendant's inconsistent defense filed in his answer to discovery.

At trial, during cross-examination, the prosecutor asked the defendant:

"Q. Did you ever file an answer in the court saying that somebody else did the acts in which—

Miss Edwards [defense counsel]: Objection. May we have a side bar?"

Counsel then argued that impeachment on the answer not signed by the defendant was improper, and moved for a mistrial, which was denied. The defendant did not ask to strike the question and did not ask that the jury be

instructed to disregard the question. When the court reconvened a new line of questioning was undertaken. The question at issue was never answered by the witness.

■■ An examination of the circumstances surrounding the question asked by the prosecutor shows the court's action was sufficient to overcome any prejudicial effect resulting from the question, and the court, therefore, properly denied the defendant's motion for a mistrial.

The defendant further claims the trial court committed reversible error when it admitted a piece of sheet metal into evidence although the State failed to show a chain of possession.

This argument is premised on the false assumption that chain of possession is the only manner in which a proper foundation may be laid for the introduction of evidence. In Illinois the rule is well established that a foundation may be laid either through identification by a witness or through establishment of a chain of possession. *People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742.

In the instant case three eyewitnesses positively identified the sheet metal as the weapon. At trial Officer Peebles stated the sheet metal was the weapon with which he had been struck. Both Grasz and Stanley stated the sheet metal was the same one they saw the defendant use in striking Peebles.

■■ A complete foundation was laid by the People for the introduction of this evidence. Additional proof of chain of possession was, therefore, unnecessary. The trial court properly admitted the piece of sheet metal into evidence.

In addition to the issues commented upon above, the brief on appeal raised a number of issues which are not properly before this court. Each of these additional issues was either not raised in the defendant's motion for a new trial, not properly objected to or not preserved for appeal by proper motion. Since these issues are not properly before us they will not be considered for review (see *People v. Touhy* (1964), 31 Ill. 2d 236, 201 N.E.2d 425, as to waiver if not included in written motion for a new trial; *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817, as to waiver if no specific or timely objection is made).

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

ROMITI and LINN, JJ., concur.