THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILBUR RHODES, Defendant-Appellant.

Fifth District  No. 77-541

Opinion filed February 1, 1980.—Rehearing denied March 25, 1980.

KASSERMAN, J., dissenting.

Michael J. Rosbrough and Jeff M. Plesko, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (Raymond F. Buckley, Jr., and Curtis L. Blood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Wilbur Rhodes, appeals from a judgment of conviction in the Circuit Court of St. Clair County entered on a jury verdict finding him guilty of the offense of burglary. He was sentenced to a term of three to nine years' imprisonment.

The issues raised by defendant on review are several and concern the sufficiency of the evidence, the admissibility of certain testimonial and physical evidence, and the conduct of the prosecutor during his cross-examination of defendant and closing argument to the jury.

Marshall Gurley testified that on February 23, 1977, at approximately 4 p.m., he returned to his home at 8304 Carol Drive in East St. Louis after leaving his place of employment where he had worked as a school teacher since 8 a.m. that morning. After entering the house through the front door, Gurley discovered that several drawers of his bedroom dresser had been pulled out and that the contents of a file folder had been emptied onto the floor in another room. Gurley related that when he entered the kitchen, he noticed that the door between the kitchen and a glassed-in back porch was open and that the pane in the top half of the kitchen door had been broken. Upon further examination, he discovered that a storm window on the porch to the kitchen was no longer locked. He stated that he observed pieces of glass from the kitchen door pane on the kitchen floor and the porch floor as well as pieces of glass from the porch window on the porch floor and outside in the yard. Although he found nothing missing from his

home, Gurley telephoned the police and reported the breakin. All the doors and windows were locked when he left for work in the morning. Gurley was not acquainted with the defendant.

Officer James Detloff of the East St. Louis police department testified that he was dispatched to Gurley's home after the report of the burglary. His duties included examining the scene for physical evidence. He described the dimensions of the porch as 10 feet 6 inches by 6 feet 6 inches, and the distance from the porch door to the kitchen door as approximately 11 feet to 12 feet. In the course of his investigation, Detloff found fingerprints on a large piece of glass which he picked up on the porch, near the kitchen door, which he identified as part of the broken window pane from the kitchen door. He explained that he obtained one "lift" with two prints from the piece of glass which he compared with defendant's FBI fingerprint card later that evening, matching the latent prints with defendant's right index and middle fingers as shown on the card. Detloff located defendant's FBI fingerprint card by reference to a fingerprint classification and that was the only print card he utilized for comparison; although, he stated that he had looked at at least 10 samples before determining that the two latent fingerprints were defendant's. No check for latent prints was made anywhere inside Gurley's house because it did not appear that the surface of the dresser and drawers was suitable for latent prints.

Detloff stated that after making the fingerprint comparison on the evening of February 23, 1977, he placed the lifter tape on a piece of paper with identifying information and left the lift on a desk at the police station for his superior officer. Regarding his qualifications to testify as a fingerprint expert, Detloff testified that he had served as an identification officer for the East St. Louis police department for five years, consisting of three years full time and two years part time, and that his duties included collecting physical evidence and photographing and checking for fingerprints. He further testified that he had received 50 hours "in service" training with the department and some training by the Federal Bureau of Identification although no one from the FBI had ever checked or certified his work. He stated that he had made between 5,000 to 6,000 fingerprint comparisons and the first half of his classifications had been verified by his supervisor who had checked Detloff's work until his death a few years before. Throughout Detloff's testimony, defense counsel objected to the lack of proper foundation for use of the FBI fingerprint card, the lack of a proper showing of chain of custody for either the card or the lift and Detloff's lack of qualifications as an expert. At the close of his cross-examination of Officer Detloff, defense counsel moved that the testimony regarding the FBI fingerprint card and the fingerprint lift be stricken and that the exhibits themselves be barred from admission because of

insufficient qualification of Detloff as an expert, inadequate demonstrations of the chains of custody, and the conclusory determination as to the source of the piece of glass, namely that it came from the kitchen door window. The motion was denied.

The State also presented the testimony of Shirley Johnson, a technician employed by the East St. Louis police department, who identified defendant's FBI fingerprint card and testified that she had prepared it. She stated that the fingerprint card was in substantially the same condition at trial as when she prepared it, and she identified defendant in open court as the person she had fingerprinted. On cross-examination, defense counsel attempted to show that Johnson could not possibly remember having taken defendant's fingerprints inasmuch as she admitted having fingerprinted as many as 3,000 people since she took defendant's fingerprints. However, on redirect examination, she explained that the reason she remembered defendant was because she had seen him under arrest four or five times. She further testified that the address listed on the fingerprint card and given to her by defendant as his home address was approximately seven blocks from the address of the victim.

Defense counsel, in camera, repeated his objections to the admission into evidence of the fingerprint lift and defendant's FBI print card on the grounds previously raised, and also moved for a directed verdict. The trial court again overruled the objections and denied the motion for directed verdict.

Testifying in his own behalf, defendant stated that he had lived with his mother at 626 N. 78th Street in East St. Louis for several years and admitted that he had previously been convicted of burglary as a result of a guilty plea. He denied burglarizing the Gurley home and related that on the day in question he had spent the late morning and afternoon hours next door to his own home playing chess with a man named Vincent who was from Chicago. On cross-examination, the prosecutor asked defendant whether he had not in fact pleaded guilty to two counts of burglary as part of a negotiated plea on the previous occasion to which defendant answered affirmatively.

During his closing argument to the jury, the prosecutor made references to the fact that defendant preyed upon people who work to earn a living and that a burglar makes his living finding things in other people's houses on working days and during working hours. No objections to these remarks were made by defendant. The prosecutor also related to the jury that when a person breaks into a house by way of a window, he breaks out a pane of glass on the outside, picks out the remaining pieces of glass in the window and drops them. It was in this manner, he explained, that defendant's fingerprints came to be on the

piece of glass found by Officer Detloff. The prosecutor further explained that a person does not leave fingerprints on glass by merely breaking a window; instead, he must grab pieces of glass and pick them out of the window.

Defendant's initial contention on appeal is that the State failed to prove him guilty of the offense of burglary beyond a reasonable doubt because it failed to prove the essential elements of intent to commit a theft and entry into a building. Defendant asserts that the sole evidence of any significance produced by the State were two fingerprints taken from a piece of glass found at the crime scene and that, although one room of the house had been ransacked, there was nothing to connect him with the actual entry into the house or to show his actual presence inside Gurley's home for any purpose.

■■ The State's theory is as follows: The testimony that the outer porch window and the window in the kitchen door was broken is sufficient to support the inference that unauthorized entry was made into Gurley's previously locked residence; the fact that this was done during working hours, with the house unoccupied, permits the inference that this entry was made with the intent to commit a theft; and the presence of defendant's fingerprints on the broken piece of glass indicates that defendant was the burglar.

Section 19—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 19—1(a)) defines burglary as follows:

> "A person commits burglary when without authority he knowingly enters or * * * remains within a building * * * or any part thereof, with intent to commit therein a felony or theft."

The specific elements of the offense, entry and the manner thereof, as well as the requisite intent to commit a felony or theft may properly be inferred from the facts in evidence. (*People v. Underhill* (1967), 38 Ill. 2d 245, 230 N.E.2d 837, *cert. denied* (1968), 391 U.S. 912, 20 L. Ed. 2d 651, 88 S. Ct. 1803; *People v. Cokley* (1977), 45 Ill. App. 3d 888, 360 N.E.2d 545.) As the State correctly asserts, it is not essential to allege or prove that anything was taken from the building or that defendant was in the possession of any of the proceeds of the burglary since the offense is complete upon the entering with the intent to steal. (*People v. Shoemaker* (1975), 31 Ill. App. 3d 724, 334 N.E.2d 347.) However, while burglary may be sufficiently proved by circumstantial evidence and inferences drawn therefrom (*People v. Palmer* (1964), 31 Ill. 2d 58, 198 N.E.2d 839), the proof of circumstances must be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. (*People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770.) Although defendant's guilt need not be proved beyond any

possibility of a doubt when the State relies entirely upon circumstantial evidence, such a conviction cannot stand if the proof supports any reasonable theory of defendant's innocence. (*People v. Huff* (1963), 29 Ill. 2d 315, 194 N.E.2d 230; *People v. Wilson* (1948), 400 Ill. 461, 81 N.E.2d 211.) Hence, the circumstantial evidence must be of such a character that the jury is convinced beyond a reasonable doubt of defendant's guilt. *People v. Colby* (1963), 27 Ill. 2d 273, 189 N.E.2d 317.

■■ Applying the foregoing principles to the instant case, we are of the opinion that the State has proved defendant guilty of the offense of burglary beyond a reasonable doubt. While defendant argues that there is a reasonable hypothesis consistent with his innocence that may be drawn from these facts, none has been suggested, and he failed to put forth either at trial or on appeal a plausible theory as to the manner his fingerprints were placed on the glass from the kitchen door. Admittedly, the prosecution must rely on the strength of its case, but the jury is not required to search for some plausible theory of innocence not suggested by the evidence. (*People v. Morgan* (1976), 44 Ill. App. 3d 459, 358 N.E.2d 280.) The defendant never suggested that he had been to the burglarized premises or how his fingerprints were placed on the piece of glass from the kitchen door. (Compare *Stevenson v. United States* (D.C. Cir. 1967), 380 F.2d 590, with *Borum v. United States* (D.C. Cir. 1967), 380 F.2d 595.) The jury obviously did not believe his alibi.

■■■ Intent, as any state of mind, may only be proved circumstantially in the absence of an admission by the accused. Defendant's presence at the broken kitchen door and the evidence indicating that a search had been made of the interior of the house were sufficient to warrant the jury to infer the defendant not only entered the house, but that he did so with the requisite felonious intent. (*People v. Johnson* (1963), 28 Ill. 2d 441, 192 N.E.2d 864.) It is entirely proper that the jury utilize the presence of defendant's fingerprints to establish both defendant's entry into the house and that the entry was made with the intent to commit therein a theft. We do not consider it significant that no comparison of the glass fragments was made in an effort to show their origin. The fact remains that defendant's prints were found on a piece of broken glass on the back porch of Gurley's home, and there was testimony that the glass came from the kitchen door.

■■ Defendant assigns as error the admission into evidence of the defendant's fingerprint record on file at the East St. Louis police department. This card, on a form prescribed by the Federal Bureau of Investigation, contains, in addition to a complete set of fingerprints, information which might suggest to the jury that the defendant is a person possessed of a criminal nature who has been arrested before. The jury's attention was never directed to this information by the prosecution. The

defendant, however, vigorously questioned Officer Detloff's competency as an expert to compare the latent prints found at the scene of the burglary with the fingerprints on the standard FBI fingerprint card used as an exemplar. To the extent that the card suggests that defendant had a prior arrest record, which defendant admitted on direct examination in his own defense, this evidence falls within the exception which permits evidence of other criminal activity or arrests where the evidence is material to an issue of motive, intent, identification, absence of mistake or *modus operandi.* (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) This evidence was critical to the identification of defendant as the perpetrator of the burglary. Furthermore, no objection to the admissibility of the card was ever made in the trial court on the basis now urged on appeal. At trial, the defendant's attack on the fingerprint card was grounded on the lack of foundation evidence of authenticity. The fingerprint technician who identified the card and stated that it was prepared by her was subjected to a searching cross-examination as to her recollection of the defendant considering that she had testified to fingerprinting approximately 3000 individuals since taking defendant's prints. The State was quite properly allowed to show that she had seen defendant under arrest at the police station four or five times and had reason to remember him. No objection was made to any of the testimony concerning defendant's record of conviction or prior arrests nor was any error assigned to the admission of this evidence in defendant's post-trial motion.

■■ The defendant also questions the qualifications of Officer Detloff as an expert in fingerprint identification. Detloff testified that he received training from the Federal Bureau of Investigation and 50 hours in-service training, had read the current literature distributed for those engaged in the field, and had been engaged in lifting, classifying and comparing fingerprints for approximately five years. He explained in some detail the system of classifying and comparing prints and stated that he had classified and compared between 5,000 and 6,000 prints. Defendant acknowledges that the trial court is allowed considerable discretion in determining the qualifications of a witness to testify as an expert. Admittedly, Detloff did not have the preeminent qualifications of the experts who testified in *People v. Speck* (1968), 41 Ill. 2d 177, 195, 242 N.E.2d 208, 218; however, under the reasoning of *Speck*, we believe he demonstrated sufficient experience and knowledge to qualify as an expert and we cannot say that the trial court was in error in admitting his testimony.

Defendant next contends that the court erred in admitting into evidence the latent prints and FBI print card because no adequate chain of custody was demonstrated. Defendant argues, citing *People v. Cain*

(1966), 35 Ill. 2d 184, 220 N.E.2d 195, that the State has the burden of showing a continuous chain of custody to establish the required foundation proof for the admission of these exhibits. Of course, the purpose of the rule is to negate the possibility of tampering or substitution and, therefore, the rule is applicable to demonstrative and real evidence that is easily subject to tampering or substitution without detection. Here, both Officer Detloff and the fingerprint technician testified that the latent prints and FBI fingerprint card were in substantially the same condition as when prepared; furthermore, both testified that the exhibits were not subject to alteration or substitution without detection. Significantly, no suggestion of substitution, alteration or tampering was ever made. (*People v. Richards* (1970), 120 Ill. App. 2d 313, 339, 256 N.E.2d 475, 489.) The latent prints were placed on "lifter tape" on the back of which Detloff had written pertinent information concerning the Gurley burglary and placed his initials thereon. Detloff testified that the tape could not be removed without destroying the latent prints. Technician Johnson identified the FBI print card as one prepared by her. It bore her signature and defendant's signature. The defendant's fingerprints were placed on the card by defendant in her presence and with her assistance. Any attempt to substitute another's prints or to alter the prints would be readily apparent and, according to her testimony, could not be done.

■■ While we believe an adequate chain of custody was demonstrated as both the latent prints and the FBI cards were stored in a locked room at the East St. Louis police headquarters and only a limited number of personnel had access to the room (*People v. Harper* (1962), 26 Ill. 2d 85, 185 N.E.2d 865), proof of a continuous chain of custody is not the sole manner in which a foundation may be laid for the admission of evidence that is susceptible to identification by sight.

In *People v. Jarosiewicz* (1977), 55 Ill. App. 3d 1057, 1064, 371 N.E.2d 949, 955, the court said:

> "The defendant further claims the trial court committed reversible error when it admitted a piece of sheet metal into evidence although the State failed to show a chain of possession.
>
> This argument is premised on the false assumption that chain of possession is the only manner in which a proper foundation may be laid for the introduction of evidence. In Illinois the rule is well established that a foundation may be laid either through identification by a witness or through establishment of a chain of possession. *People v. Greer* (1963), 28 Ill. 2d 107, 190 N.E.2d 742."

This rule has been applied to a variety of physical evidence. (*People v. McKnight* (1977), 55 Ill. App. 3d 1052, 371 N.E.2d 946 (a watch and receipt); *People v. Houck* (1977), 50 Ill. App. 3d 274, 365 N.E.2d 576 (a torn jacket); *People v. Sansone* (1976), 42 Ill. App. 3d 512, 356 N.E.2d 101

(record albums).) Thus, to establish a foundation by identification, the witness need only identify an exhibit capable of visual identification and establish that the exhibit is in substantially the same condition as it was when prepared or at the time of the offense. Here, the evidence was not simply the fingerprints, but two cards containing printed information and signed by the persons who prepared the exhibits.

■■ Defendant asserts that the prosecution committed reversible error in its cross-examination of defendant concerning his prior convictions. The defense, in an effort to soften the impact of defendant's prior conviction for burglary, stated on direct examination that he had one prior conviction for burglary and had served time in the penitentiary. On cross-examination, the State brought out the fact that defendant had pleaded guilty to two charges of burglary in exchange for the State's recommendation of a minimum sentence and the dismissal of two other charges. While it was improper for the prosecution to go into the details of the convictions (*People v. DeHoyos* (1976), 64 Ill. 2d 128, 355 N.E.2d 19), no objection was made to any of the questioning, nor was the matter assigned as error in defendant's post-trial motion. The issue has therefore been waived. (*People v. Cunitz* (1977), 45 Ill. App. 3d 165, 359 N.E.2d 1070; *People v. Harrawood* (1978), 66 Ill. App. 3d 163, 383 N.E.2d 707.) In any event, evidence of an additional burglary conviction could hardly be considered prejudicial. *People v. Bey* (1969), 42 Ill. 2d 139, 147, 246 N.E.2d 287, 292.

■■ Lastly, defendant contends that reversible error was committed by three statements made by the prosecution in closing argument. No objection was made to two of the comments, and this contention as to these remarks has been waived. Furthermore, we have examined the argument objected to and find nothing improper in the argument made. The argument was based on the evidence and inferences properly drawn therefrom, on defendant's credibility as a witness and on the evil of the crime of house burglary. The judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

JONES, P. J., concurs.

Mr. JUSTICE KASSERMAN, dissenting:

I am unable to agree with the conclusion reached by the majority. While it is true, as stated in *People v. Palmer* (1964), 31 Ill. 2d 58, 198 N.E.2d 839, that burglary may be proved by circumstantial evidence and inferences derived therefrom, the court in *People v. Marino* (1970), 44 Ill. 2d 562, 256 N.E.2d 770, established the requirement that the proof of

circumstances must be of a conclusive nature, leading to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime. Further, as recognized by the majority opinion, a conviction cannot stand if the proof supports any reasonable theory of a defendant's innocence. *People v. Huff* (1963), 29 Ill. 2d 315, 194 N.E.2d 230; *People v. Wilson* (1948), 400 Ill. 461, 81 N.E.2d 211.

Applying the foregoing principles to the instant cause, I am of the opinion that the State has failed to prove defendant guilty of the offense of burglary beyond a reasonable doubt. Here the State sought to establish defendant's guilt based on a double inference. First, that defendant's fingerprints on the piece of glass found near the kitchen door of Gurley's house indicated that he made an unauthorized entry on the day in question. Secondly, that the evidence of the ransacked room showed that he entered the building with the requisite criminal intent to complete the offense. However, I believe that the State has failed in its proof of the first element, unauthorized entry.

The only evidence which circumstantially proved that defendant entered Gurley's home as charged was the two fingerprints lifted from a piece of glass which was found near the kitchen door. However, the testimony presented was that several pieces of broken glass were scattered about the porch near the kitchen door and outside the house beneath the broken storm window. There is nothing in the record to indicate that any comparison of the types of glass was made or attempted in order to show the origin of the fragment of glass upon which defendant's fingerprints were discovered. I also note that defendant's fingerprints were found on only one side of the piece of glass and that it was not shown on which side. These facts seem to negate the prosecutor's assertion in closing argument that the only way the fingerprints could be impressed on the fragment would have been by defendant's act of picking the glass out of the window and dropping it to the floor. I find this theory difficult to accept where defendant's fingerprints were not found on both sides of the glass fragment.

I am aware of the rule that an accused's fingerprint found in the place where the crime was committed, or in the immediate vicinity, may be sufficient proof of identity as to sustain a conviction where the fingerprint could have been impressed only at the time the crime was committed. (*People v. Donahue* (1977), 50 Ill. App. 3d 392, 365 N.E.2d 710; *People v. Reno* (1975), 32 Ill. App. 3d 754, 336 N.E.2d 36.) In certain instances, evidence of the particular location of the fingerprints satisfies this requirement, as does the State's proof of the chain of contact of the touched article which would show that the article could have been touched only at the time of the crime. (See *People v. Reno*.) However, in

this cause, circumstantial evidence that the defendant was probably at the location at some time in the past does not prove beyond a reasonable doubt that defendant made the fingerprint impressions at the time Gurley's windows were broken. The State's evidence did not rule out the possibility that the impression was made at another time. In *People v. Donahue*, the accused's "unexplained fingerprint" found on a steam iron which had been used as a murder weapon was held to be insufficient proof that the accused and no one else committed the crime where there was testimony by the victim's sister that a man resembling the accused had been entertained by the victim in her home approximately one week prior to the murder.

There was no evidence in the instant case which would tend to show that defendant lawfully had been in or near Gurley's house prior to the breakin. Gurley's testimony did not rule out such a possibility, and defendant did not allude to the subject during his testimony. Citing *People v. Morgan* (1976), 44 Ill. App. 3d 459, 358 N.E.2d 280, the State asserts that it is relevant that defendant has at no time put forth a plausible alternative theory as to how his fingerprints came to rest on the particular piece of glass when confronted with the evidence that he lived a few blocks from Gurley's house. This failure of defendant to explain the presence of his fingerprints was alluded to by the majority in their conclusion that there was sufficient proof of defendant's guilt.

The circumstantial evidence, which this court found sufficient to sustain defendant's conviction, in *Morgan* also included an implied admission by defendant affording a permissible inference of guilt. No such inference exists in this cause. Further, the instant defendant was not obligated to explain the existence of his fingerprints. (See *Borum v. United States* (D.C. Cir. 1967), 380 F.2d 595.) To the contrary, the State was required to "rely on the reliability of its own evidence and not the unreliability of defendant's." *People v. Holsapple* (1975), 30 Ill. App. 3d 976, 990, 333 N.E.2d 683.

I believe the case at bar evinces an attempt by the State to improperly shift the burden to defendant to explain the presence of his fingerprints where no inference of guilt exists as it did in *Morgan*. In my opinion, the State failed to sufficiently establish that the piece of glass on which defendant's fingerprints were found was a fragment of the broken kitchen door window rather than of the porch storm window. Also, there was no evidence that the broken glass could have been touched only at the time of the crime as in *Reno* or that defendant was not lawfully in or near Gurley's house prior to the breakin as in *Donahue*.

In view of the fact that the fingerprints were found on only one side of the glass fragment, it is necessary to determine whether the fragment came from the window of the kitchen door or the broken storm window.

The presence of defendant's prints on the storm window on the outside of the house would not necessarily establish that he made an unauthorized entry into the house on the day in question.

Accordingly, it is my opinion that the facts proved are not consistent only with defendant's guilt but are also consistent with other reasonable hypotheses of innocence. Therefore, the proof was not of such a conclusive nature and tendency, leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime.

For the reasons stated, I would reverse the judgment of the Circuit Court of St. Clair County.