THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* IRA BRAINERD, Defendant-Appellant.
Second District (1st Division)   No. 75-153

Opinion filed August 23, 1976.

Edward F. Diedrich, of De Kalb, and Ralph Ruebner and Joshua Sachs, both of State Appellate Defender's Office, of Elgin, for appellant.

James A. Carr, State's Attorney, of Sycamore (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Defendant was convicted in a jury trial of possession of more than 200 grams of a substance containing amphetamines, a controlled substance (Ill. Rev. Stat. 1973, ch. 56½, par. 1402(a)(6)). He was sentenced to a term of 4 years to 4 years and 1 day. He appeals, contending that the statute is unconstitutional and alternatively that the case should be reversed and remanded for a new trial because evidence seized from his automobile pursuant to a claimed unlawful arrest resulted in his conviction.

Defendant's contention that the law is unconstitutional, based upon his claim in his brief that the grading of offenses and penalties upon the weight of the "substance containing" a controlled substance rather than upon the weight of the contraband substance itself results in an arbitrary and unreasonable legislative classification has been withdrawn in oral argument. See *People v. Mayberry*, 63 Ill. 2d 1 (1976).

Defendant contends only that the evidence should have been suppressed because the officers acted on an uncorroborated tip from an unreliable informer and thus lacked probable cause to arrest him.

The officers acted upon information received from one James Fitzpatrick, a student at Northern Illinois University, who had been arrested for possession of amphetamines. Fitzpatrick indicated that he was ashamed of his activities and was concerned about embarrassing his family and himself in his small home community. He told the officers that he had arranged for a drug transaction with a man named "Ira" in order to purchase 10,000 amphetamine tablets in West Chicago earlier that

evening. He said he lost his way and failed to keep the appointment but was arrested when he returned to De Kalb and officers found a controlled substance "left over from a previous deal." He said that he had never met "Ira" but had dealt with a former roommate who had told him approximately 2 weeks prior to the incident that if he needed "speed" he should contact "Ira." Fitzpatrick admitted dealing in drugs over a period of years. The State's attorney told Fitzpatrick that he could possibly be granted immunity from the charge of possession of amphetamines if he were able to furnish the police with information leading to a larger drug dealer within 48 hours.

Fitzpatrick was then released from custody and returned to his residence in De Kalb at approximately 9:45 the evening of July 30, 1974. A short time later Fitzpatrick called and said that "Ira" had called him proposing that they meet at T.K.'s Tavern in De Kalb and close the deal; that "Ira" had told Fitzpatrick that he was wearing a checkered shirt, that he had long blond hair and that he would be with a lady companion whom he did not want to involve in the drug transaction. The caller referred to Fitzpatrick as "farmer," a name which Fitzpatrick's roommate commonly called him. The man told him that he was going to pretend that he had borrowed some tools and they would go out to the car and get the tools. Immediately after the conversation Fitzpatrick notified the police and the assistant State's attorney involved in his questioning and they instructed him to meet "Ira" and proceed with the transaction.

The officers searched Fitzpatrick and found nothing out of the ordinary. Fitzpatrick then went into T.K.'s Lounge. One of the State's attorney's assistants was stationed inside the tavern to observe and a detective was at the rear entrance of the Lounge. The assistant State's attorney and another detective were in front of the tavern. After a short time Fitzpatrick exited T.K.'s Lounge and entered a neighboring tavern. He then reentered the Lounge and met with a person who was identified during the court proceedings as the defendant, and who fitted the description previously given to the officers by Fitzpatrick. A female companion was in the company of the defendant. She stated that the defendant had made a "couple" of phone calls while they were at T.K.'s Lounge; that the defendant introduced her to Fitzpatrick when he came into the tavern; and that there was a conversation between Fitzpatrick and the defendant about going out to the back and getting tools out of the defendant's car to return to Fitzpatrick.

After defendant and Fitzpatrick remained in the Lounge for approximately 30 minutes one of the officers was instructed to go into the tavern to inquire about the delay. On a prearranged signal to indicate when defendant and Fitzpatrick were leaving the Lounge one of the

officers followed the defendant and Fitzpatrick out the rear door and alerted the outside watchers. Defendant was seen entering a vehicle by unlocking the driver's side. He unlocked the passenger door to allow Fitzpatrick to enter; then reached into the back seat and got a bag of amphetamines which he placed on the front seat of the vehicle. He began to drive Fitzpatrick to another parking lot where the latter's car was located. The officers followed the car out of the parking lot and stopped the vehicle after approximately a block and one-half.

When the officers approached the car they found a brown paper bag containing the 10,000 amphetamine tablets situated between defendant and Fitzpatrick on the front seat and seized it.

■■ Initially the State contends that the defendant has waived his right to question the reasonableness of the arrest and the related seizure because no objection was interposed at the trial in the written post-trial motion or in the written motion in arrest of judgment. In the memorandum of law which defendant's counsel supplied to the trial court, counsel raised the reasonable doubt issue, contending only that the State did not prove constructive possession of the contraband, *i.e.*, that it was under the immediate control of defendant and that defendant had knowledge of its presence.

Where the grounds for a new trial are stated in writing the defendant is limited on review to the errors therein raised. (*People v. Hairston*, 46 Ill. 2d 348, 366-67 (1970).) While in a proper case we may take notice of errors which deprive the accused of substantial means of enjoying a fair and impartial trial even though not raised in the trial court (*People v. Pickett*, 54 Ill. 2d 280, 282-83 (1973) and may apply the "plain error" rule (Ill. Rev. Stat. 1971, ch. 110A, par. 615(a)), we do not consider that this is appropriate here. We would agree with the State that although the defendant initially filed a motion to suppress in which he questioned the validity of the arrest and the subsequent seizure of the drug it is apparent that defendant, through his privately retained counsel, did not choose to challenge the trial court's ruling denying the motion and therefore elected to abandon the argument. *Cf. United States v. Cook*, 432 F.2d 1093, 1101-02 (7th Cir. 1970), *cert. denied*, 401 U.S. 996.

■■ Moreover, we would reach the same result on the merits. We find adequate facts in the record to support the trial court's ruling that the arrest was made on the basis of probable cause and that the seizure was lawful. In the absence of prior established reliability, which, of course, was not here involved, the law requires independent corroboration of the informer's information in order to show probable cause to act upon it. (See *People v. Beattie*, 31 Ill. 2d 257, 260 (1964).) There is corroboration in this record. The surveillance of T.K.'s Lounge resulted in corroboration of the facts already stated by Fitzpatrick. *Cf. People v. Bolender*, 24 Ill.

App. 3d 804, 805-06 (1974); see *People v. Denham*, 41 Ill. 2d 1, 5-6 (1968); see also *People v. Atkinson*, 21 Ill. App. 3d 258, 260 (1974).

For the reasons stated the judgment is affirmed.

Affirmed.

GUILD, P. J., and HALLETT, J., concur.