THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THOMAS E. JONES, Defendant-Appellant.

First District (4th Division)   No. 82—61

Opinion filed November 17, 1983.

Thomas Peters, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Louis F. Stalzer, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:
Defendant Thomas Jones, was charged by information with four counts of murder (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(1), (2), (3)), one count of burglary (Ill. Rev. Stat. 1981, ch. 38, par. 19—1), and one count of robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—1). Following a jury trial in the circuit court of Cook County, defendant was convicted on all six counts and sentenced to an extended 60-year term for murder and concurrent seven-year terms for the burglary and robbery.

Defendant appeals, presenting eight claims of error. First, he argues that his motion to quash arrest should have been granted because (1) his warrantless arrest violated the fourth amendment search and seizure clause; and, (2) the police lacked probable cause to arrest. Defendant next contends he is entitled to a new trial because (3) the prosecution knowingly withheld discoverable testimony; (4) the trial court admitted hearsay testimony; (5) the trial court admitted irrelevant testimony; and (6) the prosecution used its peremptory challenges to systematically exclude black jurors. Finally, defendant claims that (7) he was denied a fair trial because the prosecutor advised the jury that the defendant had been incarcerated since his arrest; and (8) his motion to suppress fingerprint analysis testimony should have been granted because no proper chain of custody was established. Defendant also contends that his sentence should be modified to the statutory minimum of 20 years because the 60-year sentence imposed by the trial court was excessive.

We affirm the decision of the trial court.

FACTS

On June 17, 1978, at approximately 2:30 p.m., Michael Lux, a 65-year-old retired widower, was discovered by his brother Peter lying on the floor of his South LaFayette Avenue apartment with his hands tied above his head and his feet bound, strangled to death. No suspects were taken into custody at that time.

One year later, as the investigation into the homicide of Michael Lux continued, the police learned of a potential witness, Joseph Tallie, who had information about the identity of the offender. On June 11, 1979, Detective Yucaitis and Investigator John Ryan went to the home of Joseph Tallie on South LaFayette Avenue, across the street from the home of the victim. Not finding Tallie at home, the officers left their names and a request that Tallie contact their office. Later that evening, Tallie complied with the request, and the police brought him in for questioning.

Tallie testified at trial that on June 16, 1978, the day before Michael Lux was found dead in his apartment, Tallie had been present at a conversation between Bruce O'Neil, Willie Henderson and the defendant, Thomas Jones ("Tee") as the four sat talking on Tallie's front porch. In the course of the conversation, Henderson stated that he, Clyde Rogers and Tee were going to "rip off the old white man" across the street and kill him. At that time, Michael Lux was the only white man living across the street from Tallie. Tallie told the police that the next day, June 17, 1978, he saw the dead body of Michael Lux being carried from the victim's house. He saw Willie Henderson that evening and said to him, "You really did what you said you were," to which Henderson smiled.

Tallie further testified that on August 24, 1978, following his arrest on an unrelated charge, he had been held for several weeks in Cook County jail and that Henderson and Rogers were also incarcerated there. Tallie reported that while in jail, Henderson had told Tallie that Jones, Rogers and he had gone into "the old guy's home," referring to Lux, strangled him and taken some television sets. His information was corroborated by the investigators, who ascertained that Michael Lux' death was by strangulation, a television set had been taken from his home the evening he was murdered, and the records of the burglary unit and those of Cook County jail affirmed Tallie's information that Clyde Rogers and Willie Henderson were incarcerated in August and September of 1978.

Tallie further informed the investigators that Jones lived on La-

Fayette and 120th on the east side of the street, the second house from the south corner, approximately 1½ blocks from the victim's home. Finding that the corroborated facts and the description of Jones' home constituted probable cause to arrest, the officers proceeded to South LaFayette Avenue. Tallie's description as to the location of Jones' house proved accurate.

Two unmarked squad cars bearing four plainclothesmen arrived at Jones' home at approximately 11 p.m. On cross-examination, Jones described his house as having three trees in front, a porch with five or six wooden steps, and "that is about it." Two doors, an inside door and a screen door, separate the wooden porch from the inside of the house. When officers Ryan and Yucaitis walked up the steps to the porch of Jones' house, the screen door was closed, but the inside door was open. The officers knocked on the door. Jones testified that as he came to the door in response to the police knocking, he recognized the plainclothesmen standing on his porch as policemen.

The record reveals divergent testimony as to whether officers Ryan and Yucaitis entered Jones' home or remained standing on the front porch. The officers testified that Jones opened the screen door, identified himself, and then stepped out onto the porch, where the officers informed him that they wanted to speak with him in regard to "the death of the old white guy." Jones asserted however, that after he identified himself and began to open the screen door, officers Ryan and Yucaitis stepped through the door and entered his home. Jones testified that Officer Ryan then asked him to step outside so they could have a few words with him. Jones then accompanied the officers to the squad car and was driven to the police station.

At the station, Jones was taken into an interview room and questioned. Present in the room with him were officers Ryan and Yucaitis. Jones initially denied his involvement in the Lux homicide. Detective Yucaitis then left the interviewing room and returned with Joseph Tallie. Ryan testified that upon confrontation with Tallie, Jones admitted knowing him and proceeded to confess to his involvement in the homicide. The assistant State's Attorney was summoned to Area II headquarters, and in his presence and the presence of Investigator Ryan, Jones made and signed a statement detailing his involvement in the homicide of Michael Lux.

Jones stated that on June 16, 1978, he, Willie Henderson and Clyde Rogers had a conversation on Tallie's front porch in which they discussed entering the "old man's house" to burglarize it. Jones admitted that on that evening at approximately 8 p.m., he, Willie and Clyde broke into the victim's home. They took Michael Lux into the

living room. Clyde asked for something with which to tie up the victim. Jones complied by cutting off a piece of electrical cord from a lamp in the victim's house and giving it to Clyde. Jones stated that Clyde tied up the victim's hands so the three could walk around the house and decide what to take. During this search of the house, Clyde called Henderson by name in the victim's presence. Upset by this, Henderson went into the victim's bedroom and returned with a belt. Henderson put the belt around the victim's neck and strangled him to death while Jones stood in the room looking on. Jones and the others then took Michael Lux' television set and car and drove away.

The jury found Jones guilty of murder, burglary, and robbery. The trial court imposed an extended 60-year term for the murder and concurrent seven-year terms for the burglary and robbery. This appeal followed.

OPINION

I

Defendant's first argument on appeal is that the trial court erred when it denied his motion to quash arrest and suppress evidence. At trial, conflicting testimony was presented as to whether the warrantless arrest took place inside defendant's home or outside on his front porch. Defendant contends that he was arrested inside his home; citing *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, he argues that warrantless arrests inside the home absent exigent circumstances are prohibited. Alternatively, defendant contends that the arrest on his front porch is similarly prohibited under the curtilage doctrine.

The arresting officers testified at trial that the arrest took place on defendant's front porch after he came to the door, recognized the officers as policemen, voluntarily opened the door and stepped out onto the porch. Finding the testimony of the arresting officers to be more credible, the trial court held that the arrest took place outside the home.

It is the function of the trial court to resolve conflicts in the testimony and to determine the credibility of the statements given by witnesses. (*People v. Clay* (1973), 55 Ill. 2d 501, 504, 304 N.E.2d 280, 282.) A reviewing court will not disturb findings of fact reached by the trial court at a hearing on a motion to suppress evidence unless those findings are manifestly erroneous. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766, 769.) It is clear from the trial court's denial of the motion to quash arrest and suppress evidence

that the court resolved the conflict in testimony by determining that the testimony of officers Ryan and Yucaitis was more credible than that of defendant Jones. We find no reason to disturb this determination.

Defendant argues in the alternative that the warrantless arrest on the front porch of his residence violated his fourth amendment right to privacy. Defendant reasons that, under the common law doctrine of curtilage, *Payton's* prohibition against warrantless arrests in the home extends to his front porch. Defendant correctly asserts that the trial court made no findings of fact in regard to this alternative argument. It is therefore within our province to do so.

The issue of whether fourth amendment protection extends to the curtilage of one's home has not yet been addressed in this State. Courts of other jurisdictions that have addressed the issue differ as to the working definition of "curtilage." For search and seizure purposes, the generally accepted definition includes

> "those outbuildings which are directly and intimately connected with the habitation and in proximity thereto and the land or grounds surrounding the dwelling which are necessary and convenient and habitually used for family purposes and carrying on domestic employment." (Black's Law Dictionary 346 (5th ed. 1979).)

Where this or any working definition of curtilage is employed, the issue of whether a warrantless arrest within the curtilage violates the fourth amendment must be analyzed by applying those principles which govern search and seizure.

The guiding principle behind the constitutional provisions governing searches and seizures is reasonableness, and whether the police have acted reasonably depends on the circumstances of each case. (*People v. Abney* (1980), 81 Ill. 2d 159, 173, 407 N.E.2d 543, 549.) The test under the Constitution is not whether it was reasonable to procure a warrant, but whether the search or seizure was reasonable. (*Cooper v. California* (1967), 386 U.S. 58, 61, 17 L. Ed. 2d 730, 733, 87 S. Ct. 788, 790.) In order to invoke fourth amendment protection, defendant must demonstrate an unreasonable government intrusion into his legitimate expectation of privacy. *People v. Richards* (1983), 94 Ill. 2d 92, 95, 445 N.E.2d 319, 321.

The question in the present case then becomes whether the officers' warrantless arrest of Jones, under the circumstances of this case, intruded on Jones' expectation of privacy. This question must necessarily be broken down into two separate inquiries. First, did the officers act unreasonably in effecting the arrest, and second, did

Jones, under these circumstances, exhibit an actual (subjective) expectation of privacy. (*Katz v. United States* (1967), 389 U.S. 347, 361, 19 L. Ed. 2d 576, 588, 88 S. Ct. 507, 516.) With these inquiries in mind, we examine defendant's reliance on *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, to support his position that the warrantless arrest on his porch was unconstitutional.

In *Payton*, six officers went to the arrestee's apartment and, obtaining no response to their knock on the metal door, summoned emergency assistance to gain entry. (445 U.S. 573, 576, 63 L. Ed. 2d 639, 645, 100 S. Ct. 1371, 1375.) Using crowbars to break open the door, the officers entered the apartment and found no one home. The court noted that *Payton* dealt with "entries into homes made without the consent of any occupant." (445 U.S. 573, 583, 63 L. Ed. 2d 639, 649, 100 S. Ct. 1371, 1378.) The court held that the fourth amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. *Payton v. New York* (1980), 445 U.S. 573, 576, 63 L. Ed. 2d 639, 644, 100 S. Ct. 1371, 1375.

In the instant case, officers Ryan and Yucaitis walked up the steps to the porch of Jones' house and found the inside door open. The officers knocked on the closed screen door. When Jones came to the door in response to the knocking, he recognized the officers as policemen prior to opening the door. The trial court resolved the conflicting testimony as to where the arrest occurred by finding that the officers did not enter Jones' home. Jones, knowing that the officers were policemen, stepped outside onto the porch. The arrest took place on the porch.

In *Payton*, the officers (1) used force (2) to enter the inner dwelling (3) without the consent of the occupant (4) when no one was home. None of these factors is present in the instant case. The officers here did not act unreasonably. They knocked and asked Jones to step outside. Jones did not exhibit any subjective or reasonable expectation of privacy. The inside door to his dwelling was open. He recognized the officers as policemen. He voluntarily opened the door and stepped outside. At the time Jones stepped outside, the police had no more unreasonably intruded upon his privacy than does a boy collecting for the newspaper or a little girl selling girl scout cookies. (*State v. Corbett* (1973), 15 Or. App. 470, 475, 516 P.2d 487, 490.) Thus, applying the principles that govern search and seizure, we find the warrantless arrest of Jones on his front porch did not violate the fourth amendment.

## II

Defendant next argues that the police lacked probable cause to arrest because the arrest was based solely on information provided by an informant without a showing of prior reliability. The State refutes this contention, characterizing the informant, Joseph Tallie, as an ordinary citizen whose reliability need not be shown.

■ The trial court's finding of probable cause will not be disturbed on appeal unless manifestly erroneous (*People v. Borges* (1980), 88 Ill. App. 3d 912, 916, 410 N.E.2d 1076, 1080). Probable cause to arrest exists where the facts and circumstances known to the arresting officer are sufficient to warrant a man of reasonable caution in believing that an offense has been committed and that the person arrested has committed the offense. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 166, 445 N.E.2d 766, 769.) Evidence sufficient to convict is not required to support a finding of probable cause. *People v. Lippert* (1982), 89 Ill. 2d 171, 178-79, 432 N.E.2d 605, 608.

Probable cause for a warrantless arrest can be based on information furnished by an informant if the informant's reliability has been previously established, or if the information is independently corroborated. (*People v. Sturdivant* (1981), 99 Ill. App. 3d 370, 373, 425 N.E.2d 1046, 1048.) If the informer is a private citizen, not from the criminal milieu, prior reliability or independent corroboration is not necessary. (*People v. Hester* (1968), 39 Ill. 2d 489, 514, 237 N.E.2d 466, 481.) An informant who has never given information to the police in the past and is not a professional police informant is presumptively a citizen-informant. (*People v. Beto* (1980), 86 Ill. App. 3d 622, 628, 408 N.E.2d 293, 298.) Similarly, persons who supply information only after being interviewed by police officers, or who give information as witnesses during the course of an investigation are not "informers." *United States v. LaFond* (E.D. Wis. 1980), 482 F. Supp. 1379, 1384.

In the instant case, Joseph Tallie came forward with information only after the police had gone to his home and left their card, requesting that he contact them. He supplied information during the course of the Lux investigation only after being interviewed by the police. The trial court found that Joseph Tallie was not a member of the criminal milieu. These factors negate the necessity to show prior reliability.

Prior reliability is not, in any event, the sole basis upon which probable cause may be established. Independent corroboration is an alternative method of establishing probable cause for a valid, warrantless arrest. (*People v. Kahl* (1978), 63 Ill. App. 3d 703, 707, 380 N.E.2d 487, 491.) As the trial court noted, even if Tallie were a mem-

ber of the criminal milieu, a substantial part of the information he gave the police was verified by independent police corroboration. The investigators were able to corroborate by personal knowledge the cause of the victim's death and the property taken from his home. Neither investigator had told Tallie these facts prior to obtaining the information from him. The records of the burglary unit and those of Cook County jail affirmed Tallie's report of his 1978 incarceration and that of Rogers and Henderson. Finally, Tallie provided the police with a description of the location of defendant's home.

The trial court's finding of probable cause, based upon the information furnished by Joseph Tallie and the subsequent corroboration of that information by the police, is not manifestly erroneous and will not be disturbed.

### III

■ Defendant next contends that the State withheld discoverable testimony given by a State's witness at another trial. Defendant asserts that the prosecution violated Supreme Court Rule 412(a)(i) (73 Ill. 2d R. 412(a)(i)) by withholding the testimony given by Joseph Tallie at the trial of Bruce O'Neil, one of those present on Tallie's porch during the conversation in which the defendant, O'Neil and Henderson planned to burglarize and kill Michael Lux. The State maintains that Tallie's testimony against O'Neil in a separate trial for the offense of intimidation was neither relevant nor favorable to the defendant's defense and that the defendant's discovery motion was therefore not violated.

Supreme Court Rule 412(a)(i) provides in pertinent part:

"[T]he State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

(i) the names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements." 73 Ill. 2d R. 412(a)(i).

Prior to trial, defendant filed a motion for discovery requesting a list of witnesses favorable to the defense. The State's answer informed defendant that Joseph Tallie might be called as a witness. Defendant was also provided with all reports compiled by the police relating to the homicide of Michael Lux.

At trial, on cross-examination of Joseph Tallie, defense counsel asked if Tallie knew the whereabouts of Bruce O'Neil. Tallie stated he had heard that O'Neil was locked up. Defense counsel proceeded to

ask Tallie if he had testified at any trial against O'Neil to which Tallie answered affirmatively. Defendant moved for mistrial on the grounds that the State had withheld Tallie's testimony and that defendant had been taken by surprise at trial. The trial court denied defendant's motion.

The trial court has discretion to allow the introduction of undisclosed testimony absent a showing of surprise or prejudice. (*People v. Steel* (1972), 52 Ill. 2d 442, 450, 288 N.E.2d 355, 360.) Unless the undisclosed testimony is favorable to defendant or material to his guilt, the trial court's exercise of discretion will not be disturbed on appeal. (*People v. Davis* (1982), 104 Ill. App. 3d 1027, 1032, 433 N.E.2d 1011, 1015.) Moreover, any objection to the undisclosed testimony will be deemed waived for purposes of review where defendant fails to seek a continuance in order to investigate it. *People v. Ferguson* (1981), 102 Ill. App. 3d 702, 713, 429 N.E.2d 1321, 1329.

Defendant has failed to show how the undisclosed testimony of Joseph Tallie against Bruce O'Neil was material or favorable to his defense. Defendant instead argues that the undisclosed statement was relevant and that its disclosure at trial took him by surprise. Defendant's relevancy argument fails for two reasons. First, while defendant correctly points out that Supreme Court Rule 412(a)(i) (73 Ill. 2d R. 412(a)(i)) directs the prosecution to disclose all "relevant" written or recorded statements, defendant's objection at trial was specifically that section 19 of his discovery motion had been violated.

The trial court ruled that section 19 requested only the names and addresses of witnesses favorable to the defense. The State disclosed the name and address of Joseph Tallie as requested. In addition, the trial court found that the police reports and preliminary hearing reports were not favorable to the defense. Second, defendant's claim of relevancy focuses on how defendant's trial strategy might have been different had he not been surprised by Tallie's testimony. Defendant was given the name and address of Tallie prior to trial. Surprise or prejudice is not established if the defendant fails to take advantage of an opportunity to interview a witness and has not attempted to obtain a continuance to do so. (*People v. Taylor* (1982), 107 Ill. App. 3d 1019, 1022, 438 N.E.2d 565, 567.) Defendant's failure to interview Tallie or seek a recess or a continuance to investigate his testimony not only negates his claim of surprise but also waives his objection for purposes of review. (*People v. Winfield* (1983), 113 Ill. App. 3d 818, 838, 447 N.E.2d 1029, 1045.) We therefore conclude that the incomplete disclosure by the State cannot be made the basis for a new trial.

## IV

■ Defendant next contends that the trial court improperly admitted alleged hearsay testimony. Defendant specifically claims as error the admission of (1) Tallie's testimony of the act of intimidation against him by O'Neil; (2) Officer Ryan's testimony about the attack by O'Neil and his subsequent arrest and conviction; and (3) Tallie's testimony about what Henderson said on Tallie's porch the day before the murder. The State contends that the defendant waived review of these alleged errors by failing to make a proper and timely objection. The State argues alternatively that, in the absence of waiver, the testimony was invited by defense counsel's trial tactics.

We need not reach the State's alternate argument, for we agree with the contention that defendant has waived objection to the alleged hearsay testimony for purposes of review. An objection to hearsay testimony must be made at the time of its introduction and should designate the particular testimony and the specific reason for objection. (*People v. Patterson* (1981), 102 Ill. App. 3d 844, 847, 430 N.E.2d 574, 578.) Objection to hearsay made after opponent's counsel has elicited the testimony at issue or has completed another question and answer is improper and untimely, as is the mere expressing of continuing, non-specific objections. (102 Ill. App. 3d 844, 848.) Moreover, defendant's failure to include the hearsay testimony as grounds for a new trial in his post-trial motion waives such objections in the absence of plain error. *People v. Boclair* (1982), 106 Ill. App. 3d 515, 520, 435 N.E.2d 1237, 1241.

In the instant case, defendant failed to object to Tallie's testimony regarding the attack by O'Neil until the State had completed two more questions and answers. During the testimony of Officer Ryan, defendant again failed to make timely objection or to state specific grounds for his objections. In addition, in his motion and supplemental motion for a new trial, defendant completely failed to raise as error any of the complained of testimony. Where grounds for a new trial are stated in writing, defendant is limited on review to errors raised therein. *People v. Brainerd* (1976), 41 Ill. App. 3d 183, 186, 355 N.E.2d 117, 120.

Further, the alleged error does not, as defendant argues, rise to the status of plain error in view of the totality of the evidence presented by the State. (*People v. Boclair* (1982), 106 Ill. App. 515, 520, 435 N.E.2d 1237, 1241.) While failure to include an issue in a written post-trial motion generally results in waiver, this court may review errors that deny the accused a fair and impartial trial under the plain error doctrine. (*People v. Tonaldi* (1981), 98 Ill. App. 3d 528, 530, 424

N.E.2d 1200, 1202.) An accused, however, is guaranteed a fair trial, not one totally free from error. *People v. Blackman* (1976), 44 Ill. App. 3d 137, 140-41, 358 N.E.2d 50, 53.

Here, in light of the other evidence offered at trial, we cannot conclude that the admission of the alleged hearsay testimony of Joseph Tallie and Officer Ryan deprived the defendant of a fair trial. Evidentiary offerings included defendant's voluntary confession as to his involvement in the planning and execution of the crimes, corroboration of that confession by credible witnesses, and fingerprints found on a lamp in the victim's home from which defendant ripped an electrical cord that he admits was used to bind the victim. Because the evidence demonstrates that defendant's conviction was not dependent on the alleged hearsay testimony, any error was rendered harmless, the plain error doctrine is inapplicable, and defendant's objections are deemed waived.

## V

■ Defendant next contends that he was denied his sixth amendment rights to a fair trial. Citing *People v. Payne* (1982), 106 Ill. App. 3d 1034, 436 N.E.2d 1046, *rev'd* (1983), 99 Ill. 2d 135, defendant claims that the State exercised its peremptory challenges to systematically exclude black jurors, thereby depriving him of a jury representative of a cross-section of the community. The State maintains that it did not discriminate against any specific group of potential jurors. The State asserts that *Payne* is no longer controlling law in Illinois and cites instead *People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220, for the proposition that a defendant may successfully attack the State's use of peremptory challenges only by establishing a systematic exclusion of black jurors in "case after case." The State argues that the defendant has failed to show that the State has systematically excluded black jurors on a continuous basis in the prosecution of criminal cases. We agree.

In *Williams*, our supreme court rejected the holding of *Payne* and reaffirmed the United States Supreme Court's ruling in *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824. The court noted that it is essential to our system of trial by an impartial jury that both sides be allowed to exercise peremptory challenges on any selected grounds. (*People v. Williams* (1983), 97 Ill. 2d 252, 278.) Affirming *Swain*, the court further noted that a constitutional issue would arise from the systematic exclusion of black jurors by peremptory challenges only where a pattern of such exclusion appeared case after case regardless of the particular circumstances involved. 97 Ill.

2d 252, 278.

Defendant, by his misplaced reliance on *Payne,* makes no attempt to establish the sort of systematic pattern of discriminatory exclusion required by *Williams.* Not only does defendant attempt to raise a constitutional issue based exclusively on the facts of the instant case, he attempts to raise such a claim on facts that plainly reveal the presence of three black jurors on the jury that convicted him. For these reasons, defendant has failed to show that the State's exercise of peremptory challenges deprived him of a fair trial.

## VI

■ Defendant next argues that he is entitled to a new trial on the ground that the jury was prejudiced by the State's eliciting testimony that defendant had been incarcerated since the day of his arrest. Defendant specifically objects to certain testimony from Joseph Tallie and Officer Ryan.

An accused cannot interject an issue into a case and then argue that it was error to bring the issue to the jury's attention. (*People v. Marino* (1980), 80 Ill. App. 3d 657, 666, 400 N.E.2d 491, 498.) On re-cross-examination of Joseph Tallie, defense counsel elicited testimony that defendant Jones had never intimidated him or told him not to testify. On redirect examination, Tallie responded affirmatively to the State's suggestion that the reason Jones had never intimidated Tallie was that Jones had been incarcerated since his arrest. Later in the trial, Officer Ryan corroborated the fact of Jones' incarceration.

The trial court ruled that the testimony was proper because invited by defense counsel's questioning of Tallie. Both the record and the applicable law support this ruling. A defendant cannot complain of the admission of testimony which was invited by the defendant's own tactics at trial. (*People v. Davis* (1977), 53 Ill. App. 3d 424, 432, 368 N.E.2d 721, 727.) A defendant who procures, invites or acquiesces in the admission of evidence, even though it be improper, cannot be heard to complain about it on appeal. *People v. Hagen* (1978), 63 Ill. App. 3d 944, 948, 380 N.E.2d 954, 958.

It is obvious from a review of the complained-of testimony that defense counsel interjected the issue of Tallie's acquaintance with O'Neil as well as whether or not defendant Jones had intimidated Tallie. Tallie was merely asked by the State to elaborate on answers invited by defense counsel in the State's effort to bolster the credibility of its witness. Defendant is therefore in no position, on review, to object to the invited testimony.

## VII

■ Defendant next claims that the admission of fingerprint analysis testimony by Officer Krupowicz was error. Defendant argues that the State failed to establish a continuous chain of custody by not introducing the witness who transferred defendant's prints and the latent lifts from officers Colby and Stella to Officer Krupowicz. The State maintains that a proper foundation was laid by the in-court identification testimony of the officers who prepared the prints.

Proof of a continuous chain of custody is not the sole manner by which to lay a foundation for the admission of evidence susceptible to identification by sight. (*People v. Rhodes* (1980), 81 Ill. App. 3d 339, 347, 401 N.E.2d 237, 242.) In Illinois the rule is well established that a foundation may be laid either through identification by a witness or through establishing a chain of custody. (*People v. Greer* (1963), 28 Ill. 2d 107, 113, 190 N.E.2d 742, 746.) It is therefore unnecessary to establish a chain of custody for fingerprint evidence where the officers who prepared the prints identify them in open court. (*People v. Thibudeaux* (1981), 98 Ill. App. 3d 1105, 1119, 424 N.E.2d 1178, 1191.) To establish a foundation by identification, the witness need only identify an exhibit capable of visual identification and establish that it is in substantially the same condition as it was when prepared. *People v. Rhodes* (1980), 81 Ill. App. 3d 339, 348, 401 N.E.2d 237, 243.

In the instant case, the latent lifts and defendant's fingerprint card were capable of visual identification. Officers Stella, Colby and Krupowicz testified that both exhibits had been deposited with the identification section of the police department. Under these circumstances, it may be presumed that the exhibit is in substantially the same condition as it was when prepared. (*People v. Rhodes* (1980), 81 Ill. App. 3d 339, 347, 401 N.E.2d 237, 242.) Defendant presented no evidence to rebut this presumption. We therefore find that a proper foundation for the fingerprint analysis testimony was laid and that the testimony was properly admitted.

## VIII

■ Defendant finally contends that the 60-year extended-term sentence imposed by the trial court was an abuse of discretion. More particularly, defendant argues that the trial court disregarded the mandate of the Illinois Constitution by failing to give adequate weight to his age and rehabilitative potential. The State maintains that the trial court considered these factors, and, due to the heinous and extremely brutal nature of the crime, properly exercised its discretion.

Sentencing is a matter of judicial discretion. (*People v. Byer*

(1979), 75 Ill. App. 3d 658, 673, 394 N.E.2d 632, 643.) Absent a clear abuse of that discretion, the sentence imposed by the trial court will not be altered on appeal. (*People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541, 545.) The Illinois Constitution requires that sentences be determined according to both the seriousness of the offense and with the objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, sec. 11.) The Constitution does not, however, require the court to give greater weight to the possibility of rehabilitation than to the seriousness of the crime. *People v. Novak* (1981), 94 Ill. App. 3d 1024, 1031, 419 N.E.2d 393, 399.

Statutory authorization for the imposition of an extended-term sentence arises under section 5—8—2 of the Unified Code of Corrections. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—8—2.) Factors in aggravation that may be considered in determining whether to impose a more severe sentence are set forth in section 5—5—3.2, which reads in pertinent part:

"(b) the following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:
\*\*\*

(2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty; or

(3) When a defendant is convicted of any felony committed against:
\*\*\*

(ii) a person 60 years of age or older at the time of the offense." Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2.

The trial court noted that defendant was over 17 at the time Michael Lux was strangled to death. The plain language of section 5—5—3.2(b) informs the court that extended-term sentences are properly imposed on offenders who are 17 at the time of the offense. An age factor has therefore been considered both by the legislature and by the trial court. This defendant and any defendant who is at least 17 at the time of the offense may qualify for an extended-term sentence when certain aggravating factors are present.

The presence of any single factor set forth in section 5—5—3.2 is sufficient to support the imposition of an extended-term sentence. (*People v. McFarland* (1981), 93 Ill. App. 3d 136, 144, 416 N.E.2d 769, 776.) The trial court found that the strangulation murder of Michael Lux was accompanied by exceptionally heinous and brutal be-

havior. The court also noted that the victim was 65 years old at the time of the murder. In addition, the trial court considered the presentence investigation report and defense counsel's argument, both relevant to rehabilitative potential. The trial court had a sufficient informational and legal basis to support the imposition of an extended-term sentence.

Accordingly, for the reasons set forth, we affirm the judgment of the trial court.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.